# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| ARMA YATES, LLC, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 15 C 7171 |
| v. | ) | |
| | ) | |
| ARMA CARE CENTER, LLC, *et al.*, | ) | Judge Thomas M. Durkin |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION & ORDER

For the reasons set forth below, plaintiffs Arma Yates LLC, Florence Heights Associates LLC, Hutchinson Kansas LLC, Minnesota Associates LLC, Ogden Associates LLC, Peabody Associates Two LLC, Sedgwick Properties LLC, and Wellington Subleasehold LLC's ("Judgment Creditors'") motion for a rule to show cause against defendant Jon Robertson ("Robertson") [138], as recently supplemented [189], is granted in part and denied in part.

## Background

On July 14, 2016, this Court entered an agreed order requiring the production of certain records prior to Robertson's deposition in this case. R. 84. The order required Robertson to "produce, on or before July 21, 2016, all business records and correspondence dating at least as far back as the filing of this lawsuit, to the extent such documents are in his possession or under his control, related to: . . . d. Details regarding any transfer of the [Esther Johnson Trust ('Trust')], or any

assets held in or by the Trust, overseas or elsewhere including, if possible, an accounting of Trust funds transferred." R. 84 ¶ 1. Judgment Creditors believe that Robertson did not produce all Trust-related documents that were in his possession or control. Robertson claims that he produced all relevant documents in his possession or control.

On December 16, 2016, this Court entered judgment in favor of Judgment Creditors in the amount of over $30 million. R. 107. The judgment remains largely unsatisfied. Judgment Creditors issued citations to discover assets on March 10, 2017. R. 108; R. 112. When Judgment Debtors failed to comply with the citations, Judgment Creditors followed up with motions to compel, and this Court granted those motions. R. 114; R. 116; R. 127. On April 15, 2017, the Court entered a turnover order specifically directing Robertson to comply with the citations. R. 128; R. 130.

On May 22, 2017, Judgment Creditors moved for a rule to show cause. R. 138. That motion sought, among other things, an order for "Judgment Debtors J. Robertson and [his wife] S. Robertson . . . to appear before the Court to answer questions, under oath, propounded by the Court and counsel for Judgment Creditors." *Id.* at 7. At a show cause hearing on May 31, 2017, the Court granted Judgment Creditors' request and ordered an evidentiary hearing to take place. R. 142.

The evidentiary hearing was subsequently postponed several times, first by Robertson's request for a continuance (R. 157) and then by Robertson and his wife's

2

two successive bankruptcy filings (R. 159; R. 163). The first bankruptcy case was dismissed by the United States Bankruptcy Court for the District of Utah on September 20, 2017. R. 160-1. In the second bankruptcy case, the Bankruptcy Court issued an order on December 4, 2017 "confirm[ing] that the automatic stay has terminated with respect to the Debtors under 11 U.S.C. § 362(c)(3) as to any actions by the Judgment Creditors with respect to the judgment debt owed to them by the Debtors" and expressly authorizing this Court to convene a show cause hearing in this case. R. 164-1 at 2-3.

After continued scheduling difficulties (*see* R. 167; R. 168; R. 173), the Court ultimately conducted a two and a half hour evidentiary hearing on March 1, 2018. R. 186. The Robertsons and one of the Judgment Creditors' counsel appeared by video. R. 187 at 1. At the end of the hearing, the Court authorized Judgment Creditors to supplement their motion for rule to show cause. *Id*. at 87. Judgment Creditors filed a supplement a few weeks later (R. 189), Robertson responded (R. 193), and the Judgment Creditors replied (R. 194).

**Analysis**

As set forth in Judgment Creditors' supplement to their motion for rule to show cause, Judgment Creditors seek three forms of relief against Robertson: (1) "civil contempt (until such time as he provides credible evidence as to the location of the Trust's assets or transfer of same), [2] criminal contempt (incarceration for providing perjurious testimony and material misrepresentations . . . ), and/or [3] a referral to an appropriate United States Attorney's Office for prosecution for

3

providing false statements and testimony, and/or bankruptcy fraud." R. 189 at 2. The Court addresses each form of requested relief in turn.

**Civil Contempt.** "To hold a party . . . in civil contempt, the district court must be able to point to a decree from the court which set[s] forth in specific detail an unequivocal command which the party . . . in contempt violated." *Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 738 (7th Cir. 1999). As the *Jones* court further explained:

> civil contempt proceedings may be classified into two categories. Coercive sanctions, which are really the essence of civil contempt, seek to induce future behavior by attempting to coerce a recalcitrant party or witness to comply with an express directive from the court. Remedial sanctions, by contrast, are backward-looking and seek to compensate an aggrieved party for losses sustained as a result of the contemnor's disobedience of a court's order or decree made for the aggrieved party's benefit. However, irrespective of the nature of the civil contempt, whether it be coercive or remedial, any sanction imposed by the court must be predicated on a violation of an explicit court order.

*Id.*

Here, Judgment Creditors seek coercive and remedial civil contempt sanctions. But Judgment Creditors do not show that Robertson violated "a decree from the court which set[s] forth in specific detail an unequivocal command." *Id.* Judgment Creditors cite this Court's motion to compel and turnover orders in general terms without identifying a specific decree in those orders they claim Robertson violated. Judgment Creditors also point to this Court's July 14, 2016 order for Robertson to produce "[d]etails regarding any transfer of the Trust, or any assets held in or by the Trust, overseas or elsewhere including, if possible, an

4

accounting of Trust funds transferred." R. 84 ¶ 1. Importantly, however, this order obligated Robertson to produce these records only "to the extent such documents [we]re in his possession or under his control." *Id.* And Robertson testified repeatedly at the evidentiary hearing that he had produced all records in his possession or under his control. R. 187 at 67, 71, 74-75.

As this Court summarized at the end of the evidentiary hearing: "I didn't hear anything today from . . . Robertson [or his wife] that they have records that they have refused to produce." *Id.* at 85. Judgment Creditors responded that Robertson could potentially obtain further records, including bank records documenting the alleged sale of assets from the Trust since 2014 as reflected in Robertson's bankruptcy schedules.[1] *Id.* at 86; *see also id.* at 66, 73-75. But as this Court explained, "Mr. Robertson said he doesn't have the money to go seek copies of any bank records because the banks don't give them to you for free." *Id.* at 86-87; *see also id.* at 75 (Robertson testified: "I am confident there's bank records. I can't afford to go buy the bank records. I gave what I had."). This Court instructed Judgment Creditors that "[t]hat's certainly something [they] could pursue if [they] wanted." *Id.* at 87.

---

[1] Robertson and his wife claim that nearly all of their assets were taken by the IRS following Robertson's guilty plea and conviction for tax evasion in 2014, and that the Robertsons then sold their jewelry, furniture, and art over a period of time beginning in 2014 to cover their living and legal expenses. *See* R. 193 at 4-5. The Robertsons claim that Judgment Creditors "refuse to believe that the U.S. Government got into the Robertsons' pockets" first "and essentially cleaned the Robertsons out." *Id.* at 5.

5

The point that gives the Court pause are the May 2016 Trust dissolution documents, which Robertson disclosed for the first time in his response to Judgment Creditors' supplemental filing. R. 193 at 27-30. These documents were specifically raised at the evidentiary hearing, and Robertson testified that he did not have them in his possession. R. 187 at 66. Then, "like manna from heaven" as the Judgment Creditors put it in their reply (R. 194 at 3), Robertson attached the Trust dissolution documents to his post-hearing response.

Although Robertson does not explain in his response how he obtained these documents, the Court does not find evidence of a violation of an unequivocal Court command based on Robertson's attachment of these documents to his response. Robertson explained at the evidentiary hearing that it was his understanding that the Trust dissolution documents were produced by his counsel to Judgment Creditors. *Id.* at 66; *see also id.* at 62. Robertson explained that after he and his wife signed the dissolution documents, he returned them to his counsel. *Id.* at 62. Robertson made a consistent representation in a March 15, 2018 proceeding in bankruptcy court. He stated that the Trust dissolution documents were "in the possession of the firm that handled it in Colorado" and not in his possession at that time. R. 194-1 at 14. Robertson's bankruptcy attorney then represented that he would "contact [the Colorado firm] and get them." *Id.* It seems likely that Robertson obtained the Trust dissolution documents through his bankruptcy counsel after this hearing, and that is why he was able to attach them to his April 3, 2018 response. R. 193. Furthermore, these documents are not evidence helpful to the Judgment

6

Creditors that Robertson would have had reason to deliberately withhold. Rather, they support Robertson's testimony about the Trust being dissolved. *See* R. 189 at 12 (Judgment Creditors raising question as to whether the Trust was ever in fact dissolved).

The remaining discussion in Judgment Creditors' supplement focuses on evidence of perjury by Robertson. But as Judgment Creditors acknowledge (R. 189 at 6), perjury alone does not warrant a punishment of civil contempt. *E.g.*, *Ex parte Hudgings*, 249 U.S. 378, 383 (1919) ("in order to punish perjury in the presence of the court as a contempt there must be added to the essential elements of perjury under the general law the further element of obstruction to the court in the performance of its duty"); *Jones*, 188 F.3d at 739 ("acts of false swearing or perjury, standing alone, are insufficient to constitute civil contempt").

In sum, Judgment Creditors have not met their burden to prove that Robertson violated a specific, unequivocal Court command. It would be one thing if Robertson had never shown up for an evidentiary hearing as ordered, or if he refused to answer questions at that hearing. But that is not the case here. Further, the remedy sought by the Judgment Creditors is to hold Robertson in contempt until he "provides credible evidence as to the location of the Trust's assets or transfer of same." R. 189 at 2. But this Court cannot compel production of evidence that a party testifies is not in his possession or control unless or until there is credible reason to find that it is in the party's possession or control. As such, the Court denies the Judgment Creditors' request to hold Robertson in civil contempt.

7

*See, e.g., Porter v. Creative Nail Design, Inc.*, 1990 WL 52299, at *2 (N.D. Ill. Apr. 11, 1990) ("Because no specific court order was violated, the court denies plaintiff's petition for a rule to show cause" and civil contempt).

**Criminal Contempt.** "The essential elements of a finding of criminal contempt under 18 U.S.C. § 401(3) are a lawful and reasonably specific order of the court and a willful violation of that order." *Doe v. Maywood Hous. Auth.,* 71 F.3d 1294, 1297 (7th Cir. 1995). "The text of § 401(3) doesn't contain a willfulness requirement, but [the Seventh Circuit], like all circuits, hold[s] that it is a necessary element that must be proved beyond a reasonable doubt." *United States v. Trudeau*, 812 F.3d 578, 588 (7th Cir. 2016), *cert. denied*, 137 S. Ct. 566 (2016). "[W]illfulness means a volitional act done by one who knows or should reasonably be aware that his conduct is wrongful." *Id.* For the same reasons the Court rejected Judgment Creditors' argument for civil contempt sanctions based on the lack of a specific court order violated by Robertson, the Court rejects Judgment Creditors' argument that the higher bar for criminal contempt is satisfied.

**Referral to United States Attorney's Office.** Judgment Creditors do, however, set forth significant evidence that Robertson has committed perjury and/or bankruptcy fraud. *See, e.g.*, R. 187 at 10, 17-19 (despite Robertson's testimony that "no cash was ever contributed to th[e] [T]rust," records appear to show that cash was transferred); *id.* at 26-29 (evidence that artwork, jewelry, and furniture items listed in May 8, 2016 letter to this Court purporting to contain "a list and description of any assets . . . that have been conveyed away [by Robertson] since

8

May 1, 2014" are not listed in Robertson's bankruptcy schedules); *id.* at 57 (impeachment of Robertson based on his deposition testimony about whose idea it was to establish the Trust); *compare id.* at 60-61 (impeachment of Robertson based on his deposition testimony about whose decision it was to dissolve the Trust) *with* R. 193 at 4-5 (Robertson's new assertion in his response that the Trust was dissolved "as part of [his] deal with the government" in connection with his prior criminal conviction for tax evasion); *compare* R. 148 ¶ 29 (Robertson declaring that "[t]he [T]rust has never been a holding company of the defaulted defendants") *with* R. 187 at 58 (Robertson's testimony authenticating organization chart appearing to show that the Trust was a holding company for the defaulted defendants).

The Seventh Circuit has found referral to a United States Attorney's Office appropriate based on a litigant's flouting of his duty to be honest with the court. *Neal v. LaRiva*, 765 F.3d 788, 791 (7th Cir. 2014); *accord Negrete v. Nat'l R.R. Passenger Corp.*, 547 F.3d 721, 722 (7th Cir. 2008) ("because it appears that Negrete may have committed perjury, we refer this opinion to the United States Attorney"). This Court "order[s] the Clerk of this court to send copies of this opinion and the case file to the United States Attorney" for the District of Utah, where Robertson's bankruptcy proceeding is ongoing, "so that he may consider the question whether [Robertson] should be prosecuted for the crime of perjury, 18 U.S.C. § 1621," bankruptcy fraud, "or any other offense that he deems appropriate." *See Neal*, 765 F.3d at 791.

## Conclusion

For these reasons, Judgment Creditors' motion for a rule to show cause against Robertson (R. 138), as recently supplemented (R. 189), is granted in part and denied in part. The Court orders the Clerk of this Court to send copies of this opinion and the case file to the United States Attorney for the District of Utah to consider whether Robertson should be prosecuted for the crimes of perjury, bankruptcy fraud, or any other offense that the United States Attorney deems appropriate.

ENTERED:

*Thomas M Durkin*
Honorable Thomas M. Durkin
United States District Judge

Dated: May 14, 2018